IN THE UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

HAROLD BRUCE DAVIS, JR.          )
                                 )
    v.                           )   NO. 3:04-0980
                                 )
TENNESSEE DEPARTMENT OF          )
LABOR AND WORKFORCE DEVELOPMENT  )

TO: Honorable Robert L. Echols, District Judge

# REPORT AND RECOMMENDATION

By order entered November 17, 2004 (Docket Entry No. 2), this action was referred to the Magistrate Judge, pursuant to Rule 72 of the Federal Rules of Civil Procedure and 28 U.S.C. §§ 636(b)(a)(A) and (B), for consideration of all pretrial matters.

Presently pending before the Court is Defendant's motion for summary judgment (Docket Entry No. 9), to which Plaintiff has filed a response[1] in opposition (Docket Entry No. 26). For the reasons set out below, the Court recommends that Defendant's motion be granted in part and denied in part.

---

[1] Plaintiff's filing is styled as a "motion in opposition," which the Court shall construe as a response in opposition.

## I. BACKGROUND

Plaintiff is an employee of the Tennessee Department of Labor and Workforce Development ("TDLWD"). He has been continuously employed by the TDLWD or its predecessor, the Tennessee Department of Employment Security, since 1974. He is currently working as an Employment Security Division Assistant Director 1 ("ESDAD1"), a position to which he was promoted on or about April 15, 2005. Prior to this promotion, he was employed as an Unemployment Program Specialist 4 ("UIPS4") in the Unemployment Insurance Division.

Plaintiff filed this pro se action against TDLWD on October 29, 2004, seeking damages and other relief under Title VII of the 1964 Civil Rights Act, 42 U.S.C. §§ 2000e et seq. Plaintiff, who is an African-American, alleges that he was discriminated against because of his race and also alleges that he was retaliated against because of his complaints about discrimination. Plaintiff filed a charge of discrimination with the Tennessee Human Rights Commission and received a right to sue letter on July 31, 2004. See Attachments to Complaint.

Plaintiff's first claim is that the terms and conditions of his employment were different and less favorable than those of white employees who worked as UIPS4's. He asserts that he was not permitted to have supervisory duties despite the fact that the UIPS4 position is a management position, that he was assigned job duties which were "below the level" of the duties assigned to him prior to his being in a management position, that he was paid less than other white UIPS4's, and that he was the only UIPS4 who was supervised by another UIPS4. He further alleges that the TDLWD maintains "policies, practices, customs, and/or usages" which discriminate against black employees in the terms and conditions of their employment. See id.

2

Plaintiff's second claim is that he has been wrongfully denied a promotion. He alleges that he was denied a promotion to six different positions which were ultimately awarded to white employees whom Plaintiff contends had less education, less seniority, and less work experience with the State of Tennessee. These positions were:

1)   Director of Field Operations;

2)   Administrator for Employment and Workforce Development;

3)   Director of Benefit Operations and UI Technical Support;

4)   Director of UI Integrity;

5)   Employment Security Division Assistant Director 1; and

6)   Unemployment Hearing Officer.

Plaintiff's final claim is that he was intentionally discriminated against as retaliation for previous and current charges of discrimination that he had filed with the Civil Service Commission, the Equal Employment Opportunity Commission, and in federal court.

## II. MOTION FOR SUMMARY JUDGMENT

Defendant argues that summary judgment is warranted and Plaintiff's claims should be dismissed as a matter of law because there are no genuine questions of material fact. Defendant contends that Plaintiff cannot set forth facts supporting a prima facie case for his failure to promote claim because five of the positions at issue were executive service positions for which he did not actually apply and, thus, he was not qualified for these positions nor was he considered for and denied a promotion to these positions. With respect to the position of Employment Security Division Assistant Director 1, Defendant asserts that Plaintiff was considered for the position but

3

was not found to be the best-qualified candidate and that another African American male was selected for the position.

Defendant contends that Plaintiff's claim of discriminatory terms and conditions of employment warrants dismissal because any differences in job duties for the UIPS4 positions were as a result of where employees were assigned within the division, which is a legitimate, nondiscriminatory explanation for any differences. Defendant contends that any differences in salary can be a result of multiple factors such as education, experience, number of promotions, salary compression, time-in-class, salary equity adjustment, job requirements, job complexity, whether supervision of employees is required, being on leave without pay, and seniority. Defendant denies that it has taken any action against Plaintiff in retaliation for exercising his protected rights to complain about workplace discrimination.

### III. SUMMARY JUDGMENT STANDARD

In order to prevail on a motion for summary judgment, the moving party must demonstrate that no genuine issues of material fact exists and that judgment as a matter of law should be granted in the moving party's favor. Smith v. Hudson, 600 F.2d 60, 63 (6th Cir. 1979). In considering a motion for summary judgment, the court must view all facts and inferences to be drawn therefrom in the light most favorable to the non-moving party. SEC v. Blavin, 760 F.2d 706 (6th Cir. 1985). The non-moving party, however, may not merely rest on conclusory allegations contained in the complaint, but must respond with affirmative evidence supporting its claims and establishing the existence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986); Cloverdale Equipment Co. v. Simon Aerials, Inc., 869 F.2d 934, 937 (6th Cir. 1989).

Not every factual dispute between the parties will prevent summary judgment. The disputed facts must be material. They must be facts which, under the substantive law governing the issue, might affect the outcome of the suit. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). The dispute must also be genuine. The facts must be such that if they were proven at trial, a reasonable trier of fact could return a verdict for the non-moving party. Id., at 248. The disputed issue does not have to be resolved conclusively in favor of the non-moving party, but that party is required to present some significant probative evidence which makes it necessary to resolve the parties' differing versions of the dispute at trial. First National Bank of Arizona v. Cities Service Co., 391 U.S. 253, 288-89 (1968).

## IV. CONCLUSIONS

A. Racial Discrimination

The initial burden is on Plaintiff to establish a prima facie case of discrimination. McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802, 93 S. Ct. 1817, 1824, 36 L. Ed. 2d 668 (1972); Texas Department of Community Affairs v. Burdine, 450 U.S. 248, 101 S. Ct. 1089, 67 L. Ed.2d 207 (1981). Plaintiff may establish a prima facie case by either presenting credible direct evidence of discriminatory intent or by using the shifting evidentiary frameworks set forth in McDonnell Douglas and Burdine. See Mitchell v. Toledo Hosp., 964 F.2d 577, 582 (6th Cir. 1992); Blalock v. Metals Trades, Inc. 775 F.2d 703, 707 (6th Cir. 1985) ("direct evidence and the McDonnell Douglas formulation are simply different evidentiary paths by which to resolve the ultimate issue of defendant's discriminatory intent"). By establishing a prima facie case, Plaintiff creates a rebuttable presumption of unlawful discrimination and the burden shifts to Defendant to

5

articulate a legitimate nondiscriminatory reason for the challenged action. <u>Burdine</u>, 450 U.S. at 254-56. Upon Defendant's proffer of a legitimate reason, the burden shifts back to Plaintiff to demonstrate that the proffered reason is a mere pretext for intentional discrimination. Thus, the ultimate burden of persuasion always remains with Plaintiff. <u>St. Mary's Honor Ctr. v. Hicks</u>, 509 U.S. 502, 511, 517-18 (1993).

In the instant action, Plaintiff has not presented any direct evidence of discrimination in support of his claims. Accordingly, the claims are analyzed under the <u>McDonnell Douglas/Burdine</u> framework.

### 1. Failure to Promote

To establish a prima facie case of racial discrimination based on a failure to promote theory, Plaintiff must show the following:

1) he belongs to a protected class;

2) he applied and was qualified for a promotion;

3) he was considered for and denied the promotion; and

4) another employee of similar qualifications who was not a member of the protected class received the promotion.

<u>See</u> <u>Dews v. A.B. Dick, Co.</u>, 231 F.3d 1016, 1020-21 (6th Cir. 2000); <u>Burton v. State of Ohio, Adult Parole Authority</u>, 798 F.2d 164, 165 (6th Cir. 1986).

Defendant asserts that Plaintiff did not apply for the executive service positions of: 1) Director of Field Operations; 2) Administrator for Employment and Workforce Development ("Administrator for Development"); 3) Director of Benefit Operations and UI Technical Support

("Director of Benefit Operations"); 4) Director of UI Integrity; and 5) Unemployment Hearing Officer. Defendant contends that, since Plaintiff did not apply for these positions, he cannot establish the second and third elements of his prima facie case. With respect to the position of Employment Security Division Assistant Director 1 ("ESDAD1"), Defendant argues that Plaintiff applied for this position and was interviewed, but was not selected. Defendant asserts that another black male was selected who was more qualified for the position.

Plaintiff's first response is that he submitted applications for two of the five positions: Director of Benefit Operations and Administrator for Development.[2] With respect to the Director of Benefit Operations position, Plaintiff states that he delivered an application to the personnel section of the TDLWD on May 2, 2003, see Affidavit (Docket Entry No. 28) at ¶ 20, and has submitted a copy of his application in support of his response in opposition. See Exhibit B to Plaintiff's response to Defendant's discovery requests. Accordingly, the parties' versions of events differ, and a genuine issue of material fact exists.

With respect to the Administrator for Development position, Plaintiff states that he applied for this position by faxing a letter to James Neeley on January 12, 2003, shortly after Mr. Neeley was appointed as the Commissioner of the TDLWD. See Plaintiff's Response to Defendant's 8(b)(7) Statement (Docket Entry No. 29) at ¶ 4. In the letter, Plaintiff included a copy of his resume and asked that he be considered for appointment to three positions, including the Administrator for Development position. See attachment to Affidavit of William J. Marett, Jr. (Docket Entry No. 11).

---

[2] Plaintiff also asserts that he submitted an application for the position of Assistant Director of UI Technical Services. See Affidavit of Plaintiff (Docket Entry No. 28) at ¶ 21. However, Plaintiff did not include a claim based on this position as part of either his complaint or the EEOC charge of discrimination. A claim related to this position is not a part of this action.

7

Defendant has not disputed that Plaintiff did, in fact, fax the letter. Nonetheless, in the absence of other evidence, the Court does not find that such an act constitutes actually applying for an open position. Indeed, Plaintiff was familiar with the method of submitting a formal written application through the TDLWD personnel section, and there is no evidence before the Court that an unsolicited letter to the incoming commissioner was viewed by the TDLWD as a formal application. Plaintiff cannot unilaterally dictate the manner or form of applying for an open position or promotion. Accordingly, the Court does not find that a genuine issue of material fact is created by this factual dispute.

Plaintiff's second response is that, in accordance with the holding in <u>Dews</u>, he is not required to satisfy the second and third elements of his prima facie case, i.e., that he applied for a position, was considered, and was rejected, because Defendant did not publicly announce vacancies for any of the positions. Defendant has not submitted a reply brief which addresses this issue.

Plaintiff is correct in his assertion of the holding in <u>Dews</u>. In <u>Dews</u>, the Sixth Circuit Court of Appeals held that:

> . . . in failure to promote cases a plaintiff does not have to establish that he applied for and was considered for the promotion when the employer does not notify its employees of the available promotion or does not provide a formal mechanism for expressing interest in the promotion. Instead, the [defendant] is held to a duty to consider all those who might reasonably be interested in a promotion were its availability made generally known.

231 F.3d at 1022. There is no evidence before the Court indicating that TDLWD notified its employees of vacancies for any of the five positions at issue or made available a formal mechanism by which employees would express interest in promotion to any of these positions. In light of Plaintiff's uncontroverted evidence that vacancies for these positions were not made known to

8

employees, the Court cannot find that Dews does not apply. Defendant makes reference to the fact that these positions were Executive Service Positions subject to appointment by the Commissioner of the TDLWD and are not protected by the Civil Service Rules.[3] However, Defendant fails to analyze this fact in light of Dews, and the Court cannot find that Dews is inapplicable simply because the positions at issue are executive positions. Defendant's only argument for dismissal of the failure to promote claim with respect to the five positions at issue is that Plaintiff did not apply for any of the five positions and, thus, cannot establish a prima facie case. See Defendant's Memorandum in Support (Docket Entry No. 10) at 8.

Presumably because Defendant relies exclusively on Plaintiff's failure to apply for the positions, Defendant does not address the separate issue of whether Plaintiff was qualified for the positions at issue. Defendant makes reference to the issue of pretext and an articulated legitimate, nondiscriminatory reason for its action. However, because Defendant relies solely on its argument that Plaintiff did not apply for the positions at issue, Defendant has not actually set forth this reason or argued why summary judgment is warranted on the issue of pretext based on the facts of this case. See Defendant's Memorandum in Support (Docket Entry No. 10) at 9. Accordingly, Defendant has not carried its burden of showing that Plaintiff cannot satisfy his prima facie burden with respect to five of the positions at issue.

With respect to the sixth position, ESDAD1, Plaintiff admits that an African-American male was selected for the position. See Plaintiff's Response to Defendant's Rule 8(b)(7) Statement

---

[3] The Court notes that there is no actual evidence before the Court supporting this asserted fact, and the Rules of the Tennessee Department of Personnel, which are referred to in the Defendant's Rule 8(b)(7) Statement, were not attached to Defendant's motion. See Docket Entry No. 12 at ¶¶ 1-2. However, it appears that Plaintiff does not contest this fact. See Docket Entry No. 29 at ¶¶ 1-3.

9

(Docket Entry No. 29) at ¶ 6. Accordingly, Plaintiff cannot satisfy his prima facie case for a claim based on this position. Summary judgment is warranted in favor of Defendant as to this claim.

2. Disparate Treatment

To establish his prima facie case of discrimination based on a disparate treatment theory, Plaintiff must show:

1) that he belongs to a protected class; and

2) that, for the same or similar conduct, he was treated differently than similarly situated employees who were not in the protected class.

Hollins v. Atlantic Co., Inc., 188 F.3d 652, 658 (6th Cir. 1999); see also Mitchell v. Toledo Hosp., 964 F.2d 577, 583 (6th Cir. 1992).

Plaintiff's disparate treatment claim is based entirely on events which occurred while he was employed as a UIPS4. This claim can be separated into four distinct allegations:

1. he was not allowed to supervise other employees despite the UIPS4 position being a management level position and despite his work time being officially reported as being spent in management and supervision;

2. he was assigned job duties below the level of those assigned to him before he was promoted to a management position;

3. he was paid less than all white employees who were in the UIPS4 position; and

4. he was the only UIPS4 who was supervised directly by another UIPS4.

See Complaint at 5.

After review of the evidence before the Court, the Court finds that any claim based on allegations Nos. 1 and 2 should be dismissed. Although Plaintiff asserts that white employees who worked as UIPS4's did not work under similar work conditions, this assertion is entirely conclusory

and unsubstantiated by any actual evidence which he has presented to the Court. Indeed, in Plaintiff's own affidavit, he states that he has no direct knowledge of the job duties of four other employees who worked at UIPS4's. See Affidavit of Plaintiff (Docket Entry No. 28) at ¶¶ 15-18. No reasonable trier of fact could find in favor of Plaintiff based on the facts before the Court.

With respect to a claim based on allegation No. 3, however, the Court finds that there is sufficient evidence before the Court to raise a genuine issue of material fact regarding such a claim. Plaintiff has submitted evidence that he was paid less salary than any of the other white UIPS4 employees despite having similar or more substantial background and work experience. See Plaintiff's Response to Defendant's Rule 8(b)(7) Statement (Docket Entry No. 29) at ¶ 17. Although Defendant makes the statement that "multiple factors determine a state employee's salary," see Defendant's Memorandum in Support (Docket Entry No. 10) at 2, such a statement, while it may be true, offers no actual insight into the claim presented by Plaintiff and whether legitimate, nondiscriminatory factors existed which justified a salary difference between Plaintiff and the four white UIPS4 employees. Based on the evidence before the Court, the Court simply cannot find that Defendant has shown that it is entitled to summary judgment on this claim.

Similarly, with respect to a claim based on allegation No. 4, the evidence before the Court is conflicting and sufficient to raise a genuine issue of material fact. Defendant admits that Plaintiff was supervised by Jim Fussell, another UIPS4, from June to October of 2003, but asserts that this supervision was for a temporary period when Mr. Fussell was "acting in charge" of the Benefits Operations/Unemployment Insurance Technical Services Unit because of the retirement of Ms. Cody Short, who had been Plaintiff's supervisor. See Defendant's Rule 8(b)(7) Statement (Docket Entry No. 12) at ¶ 18. Plaintiff disputes the asserted justification for his supervision by Jim Fussell and

11

asserts that Jeff Wilson, an employee of a higher management level, assumed responsibility for the UI Technical Services Unit. See Plaintiff's Response to Defendant's Rule 8(b)(7) Statement (Docket Entry No. 29) at ¶ 18. Plaintiff contends that all other UIPS4's in the unit should have reported to him since he had the most seniority or, alternatively, that he should have reported to Jeff Wilson and all other UIPS4's with less seniority should have reported to Mr. Fussell. The factual conflict concerning whether or not Plaintiff was the only UIPS4 to have been supervised by a peer and, if so, why this was the case, has not been addressed by Defendant. At this point, based on the evidence before the Court, the Court cannot find that summary judgment should be granted to Defendant as a matter of law on this claim.

B. Retaliation

Under Title VII, an employer may not discriminate against an employee because the employee has "opposed any practice made an unlawful employment practice by [Title VII]." 42 U.S.C. § 2000e-3(a). In order to establish a retaliation claim, Plaintiff must prove:

1) he engaged in an activity protected by Title VII;

2) this exercise of protected rights was known to Defendant;

3) Defendant thereafter took adverse employment action against him or he was subjected to severe or pervasive retaliatory harassment by a supervisor, and

4) a causal connection existed between the protected activity and the adverse employment action or harassment.

See Morris v. Oldham County Fiscal Court, 201 F.3d 784, 792 (6th Cir. 2000); Johnson v. Dept. of Health and Human Servs., 30 F.3d 45, 47 (6th Cir. 1994); Yates v. Avco Corp., 819 F.2d 630, 638 (6th Cir. 1987).

12

There is no real dispute that Plaintiff satisfies the first element of his prima facie case since he has a history of filing complaints regarding workplace discrimination. See Plaintiff's Response to Defendant's Interrogatories (Attachment to Docket Entry No. 26) at Nos. 1 and 2. Further, Defendant does not contend that Plaintiff has not satisfied the second element of his retaliation claim.

Even when the evidence before the Court is viewed in the light most favorable to Plaintiff, however, there is simply no evidence supporting Plaintiff's claim that he was retaliated against in any manner by Defendant. Initially, the Court notes that Plaintiff's retaliation claim is essentially undefined and unrelated to any particular event. He contends that all of the acts that are alleged to be acts of racial discrimination were also forms of retaliation. Plaintiff has not offered even a scintilla of evidence showing that there is any kind of causal link between the alleged retaliatory acts and the protected activity in which he engaged. Plaintiff appears to place some importance on his assertion that he contacted the Governor of Tennessee and the TDLWD Commissioner regarding job discrimination. See Plaintiff's Memorandum in Opposition (Docket Entry No. 27) at 5. However, it escapes the Court how this fact, even if true, supports a claim of retaliation or shows the existence of a causal connection. Plaintiff's subjective belief that he was subjected to retaliation is insufficient to support a prima facie case. See McDonald v. Union Camp Corp., 898 F.2d 1155, 1162 (6th Cir. 1990); Locke v. Commercial Union Ins. Co., 676 F.2d 205, 206 (6th Cir. 1982). This claim warrants dismissal.

# R E C O M M E N D A T I O N

For the reasons set out above, the Court respectfully RECOMMENDS that:

1) Defendant's motion for summary judgment (Docket Entry No. 9) be GRANTED IN PART and that Plaintiff's claim for retaliation, claim for the denial of a promotion to the position of Employment Security Division Assistant Director 1 ("ESDAD1"), and claim for disparate treatment based on allegations of differing job duties and differing supervisory authority be DISMISSED; and

2) Defendant's motion for summary judgment be DENIED IN PART as to Plaintiff's claim for the denial of a promotion to the positions of Director of Field Operations, Administrator for Employment and Workforce Development, Director of Benefit Operations and UI Technical Support, Director of UI Integrity, and Unemployment Hearing Officer and as to Plaintiff's claim for disparate treatment based on allegations of a lesser salary and of being the only employee in his position who was supervised by a peer employee.

Although both parties refer to this case being tried to a jury, see Docket Entry No. 9 at 1 and Docket Entry No. 27 at 2, neither party has requested a jury. Accordingly, unless the parties agree to a jury trial or the Court otherwise orders upon motion of either party, the Court recommends that this matter be set for a bench trial.[4]

ANY OBJECTIONS to this Report and Recommendation must be filed with the Clerk of Court within ten (10) days of receipt of this notice and must state with particularity the specific portions of this Report and Recommendation to which objection is made. Failure to file written objections within the specified time can be deemed a waiver of the right to appeal the District

---

[4] All deadlines provided in the order entered November 24, 2004, and February 18, 2005 (Docket Entry Nos. 4 and 8) have passed, and, other than the motion for summary judgment at issue herein, there are no pending motions.

14

Court's Order regarding the Report and Recommendation. See Thomas v. Arn, 474 U.S. 140 (1985); United States v. Walters, 638 F.2d 947 (6th Cir. 1981).

                                                Respectfully submitted,

                                                _____
                                                JULIET GRIFFIN
                                                United States Magistrate Judge

15