```
                  UNITED STATES DISTRICT COURT
                  MIDDLE DISTRICT OF TENNESSEE
                       NASHVILLE DIVISION
```

HAROLD BRUCE DAVIS, JR.        )
                               )
        Plaintiff,             )
                               )
    v.                         )    Case No. 3:04-0980
                               )    Judge Echols
                               )
TENNESSEE DEPARTMENT OF        )
LABOR AND WORKFORCE            )
DEVELOPMENT                    )
                               )
        Defendant.             )

## MEMORANDUM

The Magistrate Judge has entered a Report and Recommendation ("R & R") (Docket Entry No. 32), to which the Plaintiff and Defendant have filed Objections. (Docket Entry Nos. 33 & 34.) For the following reasons, the Court will adopt the R & R with one exception relating to Plaintiff having applied for the position of Assistant Director of UI Technical Services. The Court will overrule Defendant's Objections and overrule all of Plaintiff's objections except his claim that he applied for the position of Assistant Director of UI Technical Services.

### I.  FACTUAL BACKGROUND AND PROCEDURAL POSTURE

This is an employment discrimination action in which Plaintiff, *pro se*, Harold Bruce Davis, Jr. ("Plaintiff" or "Davis"), a long-term state employee, has sued his employer, the Tennessee Department of Labor and Workforce Development ("Defendant" or "TDLWD") under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e *et seq*. Plaintiff, an African

1

American, claims that the terms and conditions of his employment were less favorable than those of white employees, that he was wrongfully denied various promotions, and that he was retaliated against for engaging in protected activity, that is, complaining about discrimination.

The Magistrate Judge has adequately set forth the essential facts underlying this case at pages 2-4 of the R & R. Those facts will be expanded upon where necessary for purposes of considering the numerous objections raised by the parties.

Based upon the facts presented, the Magistrate Judge recommends that summary judgment be granted as to Plaintiff's claim for retaliation, his claim for denial of a promotion to the position of Employment Security Division Director 1, and his claim for disparate treatment based on allegations that he was given differing job duties and supervisory authority. Additionally, the Magistrate Judge recommends that the Motion for Summary judgment be denied as to Plaintiff's claim for denial of a promotion to six different positions and his claim for disparate treatment based on allegations he received a lesser salary than others and was the only employee in his position that was supervised by a peer employee.

## II. STANDARD OF REVIEW

When a party makes timely objections to a Report and Recommendation, the Court "shall make a *de novo* determination of

2

the matter and may conduct a new hearing, take additional evidence, recall witnesses, recommit the matter to the Magistrate Judge for further proceedings and consideration, conduct conferences with counsel for the affected parties, and receive additional arguments, either oral or written, as the District Judge may desire." L.R.M.P. 9(b)(3). Fed.R.Civ.P. 72(b).

### III. ANALYSIS

#### A. Plaintiff's Objections

Plaintiff has raised four objections to the R & R. Each will be considered in turn.

##### *1. Assistant Director of UI Technical Services Position*

Plaintiff first contends the Magistrate Judge erred in concluding that he applied for only six positions, instead of seven. This objection will be sustained.

The R & R lists the following six jobs as the basis for Plaintiff's claim that he was wrongfully denied a promotion:

(1) Director of Field Operations;

(2) Administrator of Employment and Workforce Development;

(3) Director of Benefit Operations and UI Technical Support;

(4) Director of UI Integrity;

(5) Employment Security Division Assistant Director; and

(6) Unemployment Hearing Officer.

(Docket Entry No. 32 at 3.) In a footnote, the Magistrate Judge referenced the position of Assistant Director of UI Technical Services but noted that "Plaintiff did not include a claim based on

3

this position as part of either his complaint or the EEOC charge of discrimination" and thus "[a] claim related to this position is not a part of this action." (Id. at 7, fn. 2.)

In his Objection, Plaintiff asserts that he did apply for the position of Assistant Director of UI Technical Services and claims that while that "is the functional title of the position" the "payroll title is: Employment Security Assistant Director 1 (ESDAD1)." (Docket Entry No. 34 at 2.) Plaintiff also notes that both his Complaint and charge of discrimination before the EEOC indicate he had applied for seven positions, two of which were ESDAD1 positions.

In his Affidavit filed in opposition to the Motion for Summary Judgment, Plaintiff avers he "personally delivered his application for the position of Assistant Director of UI Technical Services to the Personnel section of the TDLWD." (Docket Entry No. 28, ¶ 21.) Among the documents attached to the Affidavit is Plaintiff's Employment Application for the position of Assistant Director of UI Technical Services dated June 6, 2003.

Taking this evidence as true, Plaintiff did in fact fill out an application and, according to him, delivered the application to Defendant for the position of Assistant Director of UI Services. Hence the question becomes whether or not his denial of a promotion to that position was a part of his EEOC charge and the Complaint filed in this Court.

In his Charge, Plaintiff listed the denial of promotion to two different ESDAD1 positions, with one of the denials occurring in July 2003, and the other occurring in November 2003. Likewise in

4

his Complaint, Plaintiff claims he was denied promotion to an ESDAD1 position in July 2003, and again in November 2003. (Docket Entry No. 1.)

Because on a motion for summary judgment all reasonable inferences must be drawn in Plaintiff's favor, this Court concludes that Plaintiff did in fact apply for the position of Assistant Director of UI Technical Services. Nevertheless, even accepting this to be true, that does not mean that Defendant's motion with respect to that position should be denied.

As part of his *prima facie* case, it is incumbent upon Plaintiff to establish, among other things, that the promotion he sought was given to another outside the protected class. <u>Barnes v. City of Cincinnati</u>, 401 F.3d 729, 736-37 (6th Cir. 2005). Plaintiff has not made this showing. In his Affidavit, Plaintiff mentions only one ESDAD1 position,[1] and that position went to Jewell Crawford, another African American male. (Docket Entry No. 28, ¶¶ 6-14.) As for the position of Assistant Director of UI Technical Services, Plaintiff indicates only that he applied for the job (<u>id</u>. ¶ 21) – there is no indication as to who received that position.

This Court is not required to scour the record to determine whether genuine issues of material fact exist. <u>Young v. City of Cleveland</u>, 2000 WL 924590 at *2 (6th Cir. 2000). "Rather, the trial

---

[1] Interestingly, Plaintiff indicates that he is presently employed as an Employment Security Division Assistant Director 1 (ESDAD1) and that he was promoted to that position effective April 16, 2005. (Docket Entry No. 28, ¶ 2).

5

court may rely on the 'facts presented and designated by the moving party.'" Id. (quoting Guarino v. Brookfield Township Trustees, 980 F.2d 399, 404 (6th Cir.1992)). Because there has been no showing that someone outside the protected class assumed the position of Assistant Director of UI Technical Services, summary judgment with respect to this claimed discriminatory denial of promotion is appropriate.[2]

### *2. Administrator of Employment and Workforce Development Position*

Plaintiff next claims the Magistrate Judge erred in stating that Plaintiff had not applied for the position of Administrator of Employment and Workforce Development. (Docket Entry No. 34 at 2.) That objection is overruled.

In the R & R, the Magistrate Judge wrote:

> With respect to the Administrator for Development position, Plaintiff states that he applied for this position by faxing a letter to James Neeley on January 12, 2003, shortly after Mr. Neeley was appointed as the Commissioner of the TDLWD. See, Plaintiff's Response to Defendant's 8(b)(7) Statement (Docket Entry No. 29) at ¶ 4. In the letter, Plaintiff included a copy of his resume and asked that he be considered for appointment to three positions, including the Administrator for Development position. See, attachment to Affidavit of William J. Marett, Jr. (Docket Entry No. 11). Defendant has not disputed that Plaintiff did, in fact, fax the letter.

---

[2] In his Objections, Plaintiff asserts that "a lesser qualified white employee was promoted to ESDAD1" and cites for that proposition the allegations contained in his Complaint. "While this allegation might have been sufficient to withstand a pre-discovery motion to dismiss or motion for judgment on the pleadings, at the summary judgment stage after the close of discovery, Plaintiff can no longer simply rely on the allegations in his complaint; rather, he must 'present affirmative evidence' supporting his allegations in order to withstand summary judgment." Bennett v. Shroeder, 99 Fed.Appx. 707, 718 (6th Cir. 2004) (quoting Anderson v. Liberty Lobby, Inc., 106 S.Ct. 2505, 2512 (1986)).

6

> Nonetheless, in the absence of other evidence, the Court does not find that such an act constitutes actually applying for an open position. Indeed, Plaintiff was familiar with the method of submitting a formal written application through the TDLWD personnel section, and there is no evidence before the Court that an unsolicited letter to the incoming commissioner was viewed by the TDLWD as a formal application. Plaintiff cannot unilaterally dictate the manner or form of applying for an open position or promotion. Accordingly, the Court does not find that a genuine issue of material fact is created by this factual dispute.

(Docket Entry No. 32 at 7-8.)

In his Objections, Plaintiff points to Defendant's Interrogatory Response Number 7 as establishing that he did in fact apply for the Administrator for Development position. Interrogatory Number 7 asked Defendant to explain why Plaintiff was not promoted to the assorted positions for which he applied. With respect to the Administrator for Development position, Defendant wrote "Plaintiff did express an interest in this position in his letter to Commissioner Neeley dated January 12, 2003, congratulating Commissioner Neeley on his appointment as Commissioner." (Defendant's Answers to Plaintiff's Amended First Set of Interrogatories No. 7.)

To say that Plaintiff "expressed an interest" in the position by sending a letter to the Commissioner is not to say that Plaintiff filed a formal application, nor does it militate against the Magistrate Judge's conclusion that "Plaintiff was familiar with the method of submitting a written application through the TDLWD personnel section" and that "Plaintiff cannot unilaterally dictate

7

the manner or form of applying for an open position or promotion." (Docket Entry No. 32 at 8.)

In any event, this is a non-issue since, as the Magistrate Judge properly concluded, Defendant exclusively relied on Plaintiff's failure to apply for the position as support for its Motion for Summary Judgment and this reliance was misplaced. (Id.) Indeed, for that very reason, the Magistrate Judge recommended that summary judgment be denied as to Plaintiff's claim for denial of a promotion to the position of Administrator for Employment and Workforce Development. This objection is overruled.

### *3. & 4. Retaliation Claims*

Plaintiff's third and fourth objections are interrelated and have to do with the Magistrate Judge's recommendation that the claims for retaliation be dismissed. In this regard, Plaintiff first objects claiming the Magistrate Judge erred in concluding he could not establish a *prima facie* case regarding the ESDAD1 position that was awarded to another African-American male. The claimed error in this regard is that the Magistrate Judge analyzed the claim as a failure to promote claim instead of as a retaliation claim. (Docket Entry No. 34 at 3-4.) Since the former requires proof that the applicant was denied promotion in favor of one outside the protected class, see Sutherland v. Michigan Department of Treasury, 344 F.3d 603, 614 (6th Cir. 2003), but the latter does not, Plaintiff objects to the Magistrate Judge's analysis. Plaintiff also challenges the Magistrate Judge's conclusion that

8

with respect to all of Plaintiff's requests that he be promoted, Plaintiff cannot establish a *prima facie* case of retaliation.

As the Magistrate Judge correctly noted, "Plaintiff's retaliation claim is essentially undefined and unrelated to any particular event. He contends that all of the acts that are alleged to be acts of racial discrimination were also forms of retaliation." (Docket Entry No. 32 at 13.)[3] Even if the claim involving the ESDAD1 position is added into the mix and analyzed as a retaliation claim, it is clear that summary judgment is warranted because Plaintiff cannot establish another element of a *prima facie* case.

In order to establish a *prima facie* case of retaliation on the basis of race, Davis must show (1) he engaged in statutorily protected activity; (2) this exercise of protected rights was known to defendant; (3) defendant thereafter took adverse employment action against the plaintiff, or the plaintiff was subjected to severe or pervasive retaliatory harassment by a supervisor; and (4) there was a causal connection between the protected activity and the adverse employment action. Morris v. Oldham County Fiscal Court, 201 F.3d 784, 791 (6th Cir. 2000)(emphasis omitted). As the Magistrate Judge observed with regard to any conceivable claim for retaliation, Plaintiff "did not offer even a scintilla of evidence

---

[3]The Court notes that in his EEOC charge, unlike in his Complaint before this Court, Plaintiff specifically claimed that the promotion of an African-American male to the ESDAD1 position was "in retaliation for my participating in protected activity." (Docket Entry No. 1, EEOC Charge).

9

showing that there is any kind of causal link between the alleged retaliatory acts and the protected activity in which he engaged." (Id.) That failure continues in the Objections he presently raises.

In his Objections, Plaintiff lists the various jobs he applied for and points out that he repeatedly wrote or e-mailed the Governor and his staff about his belief he was being wrongfully passed over for promotions during the same time-frame. The Magistrate Judge observed that these mailings satisfied the first element and there was no question Defendant was aware of those mailings. Where the *prima facie* case falters, as the Magistrate Judge also observed, relates to the existence of the third and fourth elements – that Defendant took an adverse employment action against him and that there existed a causal connection between this action and the protected activity. (Docket Entry No. 32 at 12-13.)

Like the Magistrate Judge, it "escapes the Court how this fact [that Plaintiff wrote the Governor] supports a claim of retaliation or shows the existence of a causal connection." (Id. at 13.) The attenuated nature of Plaintiff's claimed causal connection can be seen from the fact that for several of the positions he did not even apply, and thus the fact that he may have written the Governor would have no bearing on why he did not receive those positions.

As support for his claim of retaliation, Plaintiff points to the fact that he repeatedly wrote the Governor and he repeatedly failed to receive promotions. This is not enough to establish a claim of retaliation. See Nguyen v. City of Cleveland, 229 F.3d

10

559, 566 (6th Cir. 2000)(explaining that temporal proximity alone generally will not support an inference of discrimination if there is no other compelling evidence).  Apart from the letters, Plaintiff offers only his belief that he was subjected to retaliation in the form of non-promotion because of his letter writing campaign.  Subjective beliefs about discrimination, however, are insufficient to survive summary judgment. See Giles v. Norman Noble, Inc., 88 Fed.Appx. 890, 894 (6th Cir. 2004); Hibbler v. Regional Med. Ctr., 12 Fed.Appx. 336, 339 (6th Cir. 2001); Mitchell v. Toledo Hosp., 964 F.3d 577, 585 (6th Cir. 1992).

**B.  Defendant's Objections**

Defendant has raised two broad objections to the R & R.  Those objections will be overruled.

### *1. Plaintiff's Claim of Denial of Promotion*

Defendant first objects to the Magistrate Judge's conclusion that Plaintiff's failure to apply for the positions of Director of Field Operations, Administrator for Employment and Workforce Development, Director of UI Integrity, and Unemployment Hearing Officer was not decisive because Defendant never "notified its employees of vacancies . . . or made available a formal mechanism by which employees would express interest in promotion to any of these positions."  (Docket Entry No. 32 at 8.)  In reaching that conclusion, the Magistrate Judge relied upon the Sixth Circuit's decision in Dews v. A.B. Dick Co., 231 F.3d 1016 (6th Cir. 2000) which held that

11

> in failure to promote cases a plaintiff does not have to
> establish that he applied for and was considered for the
> promotion when the employer does not notify its employees
> of the available promotion or does not provide a formal
> mechanism for expressing interest in the promotion.
> Instead, the company is held to a duty to consider all
> those who might reasonably be interested in a promotion
> were its availability made generally known.

Id. at 1022.

Because the positions at issue in this case were in the executive service, Defendant contends that the rationale in Dews does not apply and cites for that proposition Donahoo v. Ohio Dept. of Youth Services, 237 F.Supp.2d 844, 864 (N.D. Ohio 2002) and Frazier v. Ford Motor Co., 176 F.Supp.2d 719, 722-23 (W.D. Ky. 2001). Aside from not being controlling precedent, those cases are inapposite.

In Donahoo, the court stated that "[r]ead in its entirety, it is clear that the Sixth Circuit in *Dews* was addressing unfairness associated with the failure to notify potential candidates of a position through a formal posting *or some other means*." Donahoo, 237 F.Supp.2d at 863 (emphasis in original). In arriving at this conclusion, the court in Donahoo noted that the Sixth Circuit in Dews had placed primary reliance on the Eleventh Circuit's decision in Carmichael v. Birmingham Saw Works, 738 F.2d 1126, 1132-33 (11th Cir. 1984), which held that plaintiff did not have to satisfy the "applied for" or "was considered" elements of a *prima facie* case "when he did not know about it [the vacancy]]." Donahoo, 237 F.Supp.2d at 863. Thus in Donahoo, the plaintiff was not excused from the application requirement because he had been verbally informed of the vacancy. Id.

12

Frazier involved local union representatives who alleged they were denied international representative positions because of their race. Those positions were filled based on recommendations and the "application process [wa]s informal at best." Frazier, 176 F.Supp.2d at 722. Neither of the plaintiffs took obvious steps which would have made their interest known. Id. Moreover, the position of union representative was more political in nature than the position of sales manager at issue in Dews and everyone who may have been objectively qualified for the position would not necessarily want it. Id. Because of that, the court in Frazier stated that "those who do want such a job should be expected to make their wishes known." Id.

This case is far different from Donahoo and Frazier. With respect to the vacancies at issue, Plaintiff, unlike the Plaintiff in Donahoo, apparently was not informed of the vacancies. Unlike the Plaintiffs in Frazier, Plaintiff repeatedly made it known that he wanted an executive service position by consistently applying for positions about which he was aware, and by writing the Governor and expressing the same interest.[4]

### 2. *Plaintiff's Claim for Disparate Treatment*

---

[4] Defendant also asserts the Magistrate Judge erred in finding a disputed material fact as to whether Plaintiff applied for the position of Director of Benefit Operations because even if Plaintiff delivered an application to the personnel section of TDLWD, this was insufficient since it "is the Commissioner of an executive branch department who appoints Executive Service positions" and "[t]he regular civil service personnel office does not have authority over executive service positions." (Docket Entry No. 33 at 3). Even if that is so, this Court cannot conclude that Plaintiff did not apply for the position merely because he submitted his application to the personnel department.

13

Defendant next asserts the Magistrate Judge erred in finding a disputed material issue of fact regarding Plaintiff's claim for disparate treatment in terms of his pay in relation to others in his job category and his status as the only employee in his job classification who was supervised by a peer employee. Defendant contends the Magistrate Judge "ignored the undisputed fact that Plaintiff's job duties and responsibilities are different than the four other Unemployment Insurance Program Specialist 4s." (Docket Entry No. 33.)

This is incorrect. The Magistrate Judge did not ignore the fact that Plaintiff's job duties and responsibilities were different. Instead, the Magistrate Judge wrote:

> Although Defendant makes the statement that 'multiple factors determine a state employee's salary . . . such a statement, while it may be true, offers no insight into the claim presented by Plaintiff and whether legitimate non-discriminatory factors existed which justified a salary difference between the Plaintiff and the four white UIPS4 employees.

(Docket Entry No. 32 at 11.) Defendant does not attempt to offer any further insight in its present objection other than to reiterate that "Plaintiff's job duties and responsibilities are different than the four other Unemployment Insurance Program Specialist 4s" and to state "[m]ultiple factors determine a state employee's salary, such as, education, experience, number of promotions, salary compression, time-in-class, salary equity adjustment, the requirements for the job, the complexity of the job, whether supervision of employees is required, being on leave without pay, and seniority." (Docket Entry No. 33 at 5.) While all of that may be true, it does nothing to explain <u>why</u> this

14

particular Plaintiff received a lower salary as compared to the other four white UIPS4. This objection is overruled.

Finally, Defendant objects to the Magistrate Judge's conclusion that there exists a disputed issue of material fact as to why Plaintiff, the only African American UIPS4, reported to another UIPS4 who had less seniority. Contrary to Defendant's assertion, the Magistrate Judge did not improperly shift the burden to Defendant, but instead noted that the parties had different views regarding why this occurred. Defendant claimed that the UIPS4 in question, Jim Fussell, was "acting in charge" of the Unemployment Insurance Technical Services after the Assistant Director's retirement, whereas Plaintiff claims Jeff Wilson, Assistant Employment Security Administrator, assumed those responsibilities. Neither party has presented the Court with any conclusive evidence supporting their respective positions on this issue[5] and hence, the Court cannot determine, as a matter of law, that summary judgment on this question is warranted.

## IV. **CONCLUSION**

On the basis of the foregoing, the Report and Recommendation (Docket Entry No. 32) will be adopted with the exception of the

---

[5] In its "Local Rule 8(b)(7)(B) Statement of Material Facts," Defendant states that "Plaintiff was temporarily supervised for a brief period by Jim Fussell, UIPS4, who was acting in charge of the Benefits Operations/Unemployment Insurance Technical Services Unit, from June through October 2003, because of the retirement of Ms. Cody Short, Employment Security Division Assistant Director 1, who was Plaintiff's supervisor." (Docket Entry No. 12 at 7). The *sole* support for that claimed fact is an attachment to Plaintiff's complaint which makes no mention of Fussell, let alone that he was in charge after the retirement of Cody.

15

Magistrate Judge's conclusion that Plaintiff failed to apply for the position of Assistant Director of UI Technical Services. Plaintiff's Objections (Docket Entry No. 34) will be overruled with the exception of his claim that he applied for the position of Assistant Director of UI Technical Services. Defendant's Objections (Docket Entry No. 33) will be overruled.

Further, Defendant's Motion for Summary Judgment (Docket Entry No. 9) will be granted in part and denied in part. It will be granted with respect to Plaintiff's claim for retaliation, his claim for the denial of a promotion to the position of Employment Security Division Assistant Director 1, and his claim for disparate treatment based on allegations of differing job duties and differing supervisory authority. Those claims will be dismissed with prejudice.

The Motion for Summary Judgment will be denied as to Plaintiff's claim for the denial of promotion to the positions of Director of Field Operations, Administrator for Employment and Workforce Development, Director of Benefit Operations and UI Technical Support, Director of UI Integrity, and Unemployment Hearing Officer. The Motion will also be denied as to Plaintiff's claim for disparate treatment based on allegations of receiving a lesser salary and of being the only employee in his position who was supervised by a peer employee.

An appropriate Order will be entered.

_____
ROBERT L. ECHOLS
UNITED STATES DISTRICT JUDGE